# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANK KRAMMES TIMBER
HARVESTING, INC.,

    Plaintiff,

v.

LETOURNEAU ENTERPRISES, LLC,

    Defendant.

3:18-CV-1914
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 17) by Magistrate Judge Martin Carlson in which he recommends that the Court grant Defendant Letourneau Enterprises' Motion to Dismiss for Failure to State a Claim (Doc. 2) as to Plaintiff Frank Krammes Timber Harvesting, Inc.'s ("Krammes") Complaint (Doc. 1-1). Krammes has filed Objections to the Magistrate Judge's R&R (Doc. 18) and a brief in support of those Objections (Doc. 19), to which Defendant has filed a brief in opposition to Plaintiff's Objections (Doc. 20). Additionally, Plaintiff has filed a reply brief. (Doc. 21). For the reasons that follow, upon *de novo* review of Magistrate Judge Carlson's R&R, the Court will overrule Plaintiff's Objections and adopt as modified the pending R&R. Defendant's motion will be granted. Count I of Plaintiff's Complaint will be dismissed with prejudice and Counts II and III of Plaintiff's Complaint will be dismissed without prejudice. Plaintiff will be granted leave to amend those Counts dismissed without prejudice.

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

The operative complaint is the Complaint filed in the Court of Common Pleas of Schuylkill County and removed to this Court on October 1, 2018, by Defendant Letourneau Enterprises, LLC. (Doc. 1). The Complaint contains three counts: Count I – Declaratory Relief as to the parties' relationship embodied in a contract; Count II – Promissory Estoppel; and Count III – Unjust Enrichment. (Doc. 1-1). Thereafter, Letourneau filed a Motion to Dismiss for Failure to State a Claim (Doc. 2), which the Court referred to Magistrate Judge Carlson for the preparation of an R&R. In August 2019, the Magistrate Judge issued the R&R (Doc. 17) presently before this Court.

In the R&R, Magistrate Judge Carlson recommends that this Court grant Letourneau's motion to dismiss with respect to Krammes' breach of contract claim because "a contract which clearly provides that the plaintiff will receive no minimum number of loads cannot be

read as requiring the delivery of some minimum quantity of loads" and thus the "breach of contract fails as a matter of law and should be dismissed." (Doc. 17, at 1). Magistrate Judge Carlson concluded that the agreement between the parties "did not amount to an output contract" (*id.* at 16) and that the agreement between the parties (Doc. 1-1, at 31) was a completely integrated and unambiguous agreement that precluded the introduction of any parol evidence to establish that the agreement otherwise amounted to an output contract (Doc. 17, at 13-16). Additionally, Magistrate Judge Carlson recommends that this Court grant Letourneau's motion to dismiss with respect to the promissory estoppel and unjust enrichment claims because the existence of a written agreement precludes both claims. (*Id.* at 17-20).

Krammes objects to the R&R's recommendation that Letourneau's motion to dismiss be granted with respect to its breach of contract claim on the grounds that Magistrate Judge Carlson erred "in finding that the September 11, 2017 Commitment for Plaintiff to take all of the Defendant's output was not part of the agreement between the parties and was parol evidence that could not be considered." (Doc. 19, at 6). Further, "the Magistrate Judge erred in interpreting in isolation the term 'no minimum/maximum number of loads' as meaning that Defendant had no obligation to bring any loads at all, under Pennsylvania law" and in concluding that no output contract exists. (*Id.* at 9). Additionally, Krammes contends that "if the Magistrate's logic is the contract really was not a contract," then it should not be precluded from asserting alternative claims of promissory estoppel and unjust enrichment.

(Doc. 19, at 17). The Court will address Krammes' objections with respect to the breach of contract claim and the promissory estoppel and unjust enrichment claims separately.

### 1. Breach of Contract

Krammes asserts that Magistrate Judge Carlson "erred in interpreting the September 13, 2017 agreement (Doc. 1-1, at 4) as not being an output contract and in finding Defendant had no obligation to bring any loads of materials to Plaintiff under the contract." (Doc. 19, at 13). The Court finds that Plaintiff's objection is without merit and cannot conclude that the contract between the parties amounted to an output contract.

To the extent that Krammes advances arguments under the Pennsylvania Uniform Commercial Code ("Pennsylvania UCC"), 13 PA. CONS. STAT. §§ 2101-2107, that the agreement involved in this matter is an output contract, the Court will assess Krammes' arguments assuming that the Pennsylvania UCC applies. Under the Pennsylvania UCC, an output contract is a type of contract that "measures the quantity by the output of the seller . . . as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output . . . may be tendered or demanded." 13 PA. CONS. STAT. § 2306(a). Put differently, based on the statutory language, an output contract, by definition, "measures the quantity by the output of the seller." *Id.*

Here, as the Magistrate Judge noted, nothing in the agreement (Doc. 1-1, at 4) suggests that Letourneau agreed to provide for purchase by Krammes any output in its

4

entirety or any other specified amount. Indeed, the agreement only specifies an obligation to accept "any and all loads of timber . . . brought . . . by Letourneau Enterprises, LLC." (*Id.*). The agreement is clear that an obligation exists for Krammes to accept what Letourneau brings, but the agreement lacks any indication that Letourneau was required to supply Krammes with any amount of "timber, wood chips, and stump grindings." (Doc. 1-1, at 4). Thus, the Court cannot conclude that the agreement is an output contract when it does not identify any output – a crucial element to an *output* contract.

Krammes relies on the September 11, 2017, letter (Doc. 1-1, at 5) to establish that the agreement is an output contract, which it argues the Magistrate erred in failing to admit (Doc. 19, at 6-8). The Court disagrees. As Magistrate Judge Carlson noted:

> In order to determine whether a writing is the parties' complete expression of their agreement, the court must examine the writing and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties."

(Doc. 17, at 13) (quoting *Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 636 (W.D. Pa. 2013)). "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and any evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).

Here, the Court concludes that the agreement is a complete, fully integrated, and unambiguous document. The terms as to each party to the agreement are clear. Krammes agrees to "accept any and all loads of timber, wood chips, and stump grindings brought to them by Letourneau Enterprises, LLC." (Doc. 1-1, at 4). The agreement sets forth the price for each load, but also states that "[t]here will be no minimum/maximum number of loads as part of this agreement." (*Id.*). Letourneau, on the other hand, promised nothing – the parties are only bound when and if Letourneau provides "woody materials." (Doc. 1-1, at 5). It follows that if Letourneau provides no loads, then it is not in breach of the language "any and all" as that applies only to the agreement of Krammes to accept any loads which Letourneau might provide. Nor may Letourneau be deemed to have violated the contract by failing to provide any "minimum" number of loads, since the agreement expressly contemplates no minimum of loads to be delivered by Letourneau. Thus, there is no ambiguity in the agreement. Furthermore, there is nothing to suggest that the agreement is incomplete or not fully integrated. Accordingly, the Court cannot conclude that parol evidence should be admitted, including the September 11, 2017, letter (Doc. 1-1, at 5).

Nonetheless, even assuming that the September 11, 2017, letter (Doc. 1-1, at 5), should be admitted, as Krammes asserts, the letter does not help establish an output contract between the parties. The letter does not state that Letourneau will provide Krammes with any or all of the "woody materials" that are generated from the "Atlantic Sunrise Project." (*Id.*). The letter also does not state that Letourneau will exclusively provide Krammes with the

6

wood from that project. (*Id.*). The letter only states that Krammes will *accept* all woody materials generated from the project, which is, in fact, consistent with the terms of the parties' agreement. (*Id.*). Put differently, the letter only discusses what Krammes promises to accept and pay for any wood materials if Letourneau elects to supply wood, but it states no obligation on the part of Letourneau to supply any woody materials at all. Thus, one could not reasonably glean from this letter that Letourneau promised to provide any woody materials at all.

Krammes also objects on the grounds that the agreement is an output contract because "[t]he Report fails to acknowledge the implied exclusivity of dealing set forth in section 2306(b)" (Doc. 19, at 14). The assertion that the Report failed to acknowledge implied exclusivity of dealing is without merit. Section 2306(b) of the Pennsylvania UCC states:

> A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

13 PA. CONS. STAT. § 2306(b). After a close reading of the statute, nothing in the statutory language indicates that "exclusive dealing" should be read into the agreement. Additionally, Plaintiff cites to no case law to suggest that exclusivity should be implied into this agreement. Thus, the Court cannot conclude that an exclusivity requirement should be read into the agreement. In light of this, the Court cannot conclude that the agreement is an output contract.

While the Court cannot conclude that the parties' agreement amounts to an output contract, the Court finds that the parties had a unilateral contract, which was never fully formed. "Unilateral contracts . . . involve only one promise and are formed when one party makes a promise in exchange for the other party's act or performance." *First Home Sav. Bank, FSB v. Nernberg*, 648 A.2d 9, 13 (1992) (internal citations omitted). "Significantly, a unilateral contract is not formed and is, thus, unenforceable until such time as the offeree completes performance." *Id.* For example:

> If A promises B $ 100 if B walks across the Brooklyn Bridge, a unilateral contract will be formed if B does as A requests. It is a unilateral contract because it consists of a promise in exchange for a performance. However, the contract is not formed until B walks across the bridge. At that time, A owes B $100 even though B no longer has any obligation to A. A unilateral contract is formed by the very act which constitutes the offeree's performance.

*Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1194 (Pa. Super. Ct. 1987). Applied to the facts of this matter, Letourneau has yet to "walk across the Brooklyn Bridge." *Id.* Based on the agreement, Letourneau would be bound by its terms only when it provided any woody materials to Krammes. However, Letourneau never did. As such, until it performed, Letourneau had no obligation to Krammes, and thus was never bound by the terms of the agreement. Accordingly, the Court concludes that because Letourneau did not perform, no contract was ever formed between the parties.

For the foregoing reasons, the Court agrees with the Magistrate Judge that Krammes' "breach of contract claim fails as a matter of law and should be dismissed." (Doc. 17, at 16). As such, the Court will dismiss Krammes' breach of contract claim. Because the Court has

8

concluded that there is no plausible breach of contract claim based on the unambiguous language of the agreement, the Court concludes that leave to amend is futile with respect to the breach of contract claim. *See Phillips v. Cnty. Of Allegheny*, 515 F. 3d 224, 245 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

### 2. Promissory Estoppel

Because the Court concluded that a contract does not exist between the parties, Krammes' promissory estoppel claim is not necessarily precluded, as the Magistrate Judge recommended. However, the Court agrees with the Magistrate Judge on the basis that Krammes does not allege the first element of promissory estoppel, i.e. "the promissor makes a promise that he reasonably expects to induce action or forbearance by the promise." (Doc. 17, at 17-18). Krammes' reliance on the September 11, 2017, letter to allege a promise that Letourneau made is unavailing because, as discussed above, it does not contain any obligation or promise by Letourneau. Moreover, Krammes' Complaint does not allege any other promise that Letourneau made and which Krammes subsequently relied upon. Therefore, Krammes failed to state a claim upon which relief could be granted. However, the Court cannot conclude that leave to amend would be futile. *See Phillips*, 515 F.3d at 245. Thus, the Court will allow Krammes to amend Count II of its Complaint, asserting a claim for promissory estoppel.

### 3. Unjust Enrichment

With respect to the unjust enrichment claim, because the Court has determined that no binding contract exists between the parties at this time because of the unilateral nature of the parties' agreement as explained above, the Court cannot agree with the Magistrate Judge's conclusion that the parties' written agreement precludes recovery for unjust enrichment. (Doc. 17, at 19). To succeed on a claim for unjust enrichment, Plaintiff must demonstrate: (1) that it "conferred a benefit upon Defendants; (2) Defendants appreciated the benefit; and (3) Defendants accepted and retained the benefit under circumstances making it inequitable for Defendants to retain the benefit without paying him." *Argue v. Triton Digital, Inc.*, 2017 WL 1611254, at *4 (W.D. Pa. 2017).

Here, Krammes' Complaint fails to aver any way in which Plaintiff conferred a benefit on Letourneau, and that Letourneau otherwise unconscionably retained such benefit without compensation to Krammes. The closest Plaintiff comes to making such an allegation is when it avers that Krammes conferred a benefit by providing the September 11, 2017, letter, which it alleges allowed Letourneau to commence performance (Doc. 1-1, at 20, ¶¶ 94-95). Nonetheless, it is unclear how this is a benefit, and further, how that benefit came at Plaintiff's expense.

Accordingly, the Court will dismiss Krammes' unjust enrichment claim. However, because leave to amend at this stage would not be futile, the Court will allow Krammes to amend its unjust enrichment claim set forth in Count III.

### III. Conclusion

For the reasons set forth above, upon *de novo* review of the R&R (Doc. 17), the Court will adopt the R&R as modified. Letourneau's Motion to Dismiss (Doc. 2) will be granted. Count I will be dismissed with prejudice. Counts II and III will also be dismissed, but without prejudice and with leave to amend. A separate Order follows.

Robert D. Mariani
United States District Judge