## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK KRAMMES TIMBER HARVESTING, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:18-cv-1914** |
| | : | **(JUDGE MARIANI)** |
| **LETOURNEAU ENTERPRISES, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

FILED
SCRANTON

APR 27 2021

PER _____

DEP__ // CLERK

### <u>MEMORANDUM OPINION</u>

### I. INTRODUCTION

On September 11, 2018, Plaintiff Frank Krammes Timber Harvesting, Inc. ("Krammes" or "Plaintiff") filed a complaint (the "Original Complaint") in the Court of Common Pleas of Schuylkill County. (Doc. 1-1 at 13). This complaint was later removed to this Court on October 1, 2018, by Defendant Letourneau Enterprises, LLC ("Letourneau" or "Defendant") on the basis of diversity jurisdiction. The Original Complaint contained three separate claims, including claims for declaratory relief as to the parties' relationship embodied by contract (Count I), promissory estoppel (Count II), and unjust enrichment (Count III). (Doc. 1-1). Thereafter, Defendant filed its Motion to Dismiss the Original Complaint for failure to state a claim upon which relief could be granted, which this Court granted with prejudice as to Count I and without prejudice with leave to amend the Original Complaint as to Counts II and III.

Plaintiff amended the Original Complaint and filed a revised version (the "Amended Complaint") on October 16, 2019.  (Doc. 24).  On October 30, 2019, Defendant filed its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for the remaining claims and also filed an alternative Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a) as to Plaintiff's unjust enrichment claim.  (Doc. 25).  For the reasons set forth below, the Court will deny Defendant's Motion to Dismiss and deny Defendant's Motion for Summary Judgment.

## II. Factual Allegations

Defendant Letourneau is a North Carolina-based contracting company that specializes in right-of-way clearing for natural gas and oil pipelines, powerlines, and heavy civil construction.  (Doc. 24 at ¶¶ 2, 4).  In 2017, Defendant was involved in a Federal Energy Regulatory Commission ("FERC") certified pipeline construction project, the Atlantic Sunrise Project (the "Pipeline Project"), that planned to install a natural gas pipeline extension that would stretch from northeastern Pennsylvania, including portions of Schuylkill County, to existing pipelines reaching as far south as Alabama.  (Doc. 24 at ¶¶ 5-9).  For its part, Letourneau was tasked with clearing the land surface through which the pipeline would proceed and remove – and dispose of – timber and other wood materials from such designated land.  (Id.).

Plaintiff Krammes alleges that in July and August 2017, Letourneau sent a representative to Schuylkill County to meet and develop relationships with individuals or

companies engaged in timbering and harvesting operations that could assist Letourneau in the "disposal of the cuttings, grindings, chips, logs, timber and other woody materials Letourneau was obliged to remove" in connection with the Pipeline Project. (Doc. 24 at ¶ 9). Krammes was one such company. (*Id.* at ¶ 10).

Krammes further alleges that this representative spoke with Krammes' president during this period and made an "oral promise" to begin delivery of "as much as 50 to 100 trailer loads per day" of wood materials to Krammes for disposal once the Pipeline Project commenced and Krammes had obtained proper approval from FERC. (Doc. 24 at ¶ 12). Krammes contends that this promise was then "put down in two writings," referred to in the Amended Complaint as the "September 11, 2017 letter" and the "Timber Services Agreement." (*Id.* at ¶¶ 19, 25). These writings, however, make no mention of the delivery of "50 to 100 trailer loads per day" of wood product, but instead state that Krammes "will accept all woody materials generated from the Atlantic Sunrise Project" and that there would be "no minimum/maximum number of loads" to be delivered by Defendant – thus constituting, at most, unilateral contracts.[1] (Doc. 1-1 at 4-5).

---

[1] Plaintiff's initial claim for declaratory relief as to the parties' relationship embodied in a contract was dismissed with prejudice as: (I) neither the Timber Services Agreement nor the September 11, 2017 letter required Defendant to deliver to Plaintiff any wood materials generated from its project or to maintain an exclusive relationship with Plaintiff, and (II) the written agreements between the parties involved a promise to perform by Plaintiff if Defendant were to perform, thus constituting a unilateral contract that could not be enforceable or breached until performance by Defendant – which never occurred – was completed. (Doc. 22).

For Krammes to even accept any "woody materials," it was first required to obtain

FERC approval for its disposal sites.  This approval process necessitated that Letourneau

submit certain information concerning Krammes' disposal sites to FERC, which Krammes

provided to Letourneau.  (Doc. 24 at ¶ 23).  Krammes personnel were also required to

"attend[] safety, environmental and other training" to meet the project requirements, as

described to Krammes by Letourneau.  (*Id.* at ¶ 23).  In addition, Krammes took other steps

"[i]n reliance on [Letourneau's] promises" that Krammes would eventually receive deliveries

of wood material from the Pipeline Project, including renegotiating terms of delivery and

payment for its existing customers, turning down requests from third parties for timbering

and processing of wood products, and preparing and modifying its primary disposal site to

handle the anticipated deliveries from Letourneau.  (*Id.* at ¶ 24).

All the while, Letourneau had also entered into discussions with other timbering

companies in the region to provide the same services.  (Doc. 24 at ¶¶ 9, 35).  Though

Krammes eventual received FERC approval to dispose of wood materials stemming from

the Pipeline Project, Defendant eventually delivered those materials to sites operated by

third parties.  (*Id.* at ¶ 35).  No materials were ever delivered to Krammes' site.  (*Id.*).

As a result of Defendant's failure to deliver any wood materials, Krammes filed the

present lawsuit that included claims for breach of contract, promissory estoppel, and unjust

enrichment.  (Doc. 1-1 at 13).  Following dismissal of Krammes' claim for breach of contract

and amendments to the Original Complaint, Krammes now argues: (1) that the oral

promises made by Defendant's representative induced Plaintiff to take costly steps to ready

itself for delivery of wood materials that never came; and (2) that Defendant benefited from

Plaintiff's written commitments to accept wood materials from the Pipeline Project as

Defendant was then able to commence work clearing the right-of-way areas and use its

relationship with Plaintiff to negotiate more favorable price terms with third-party users or

purchasers to which it then delivered the resulting wood materials.  (Doc. 24 at ¶¶ 50-68).

Letourneau now seeks dismissal of the remaining two claims, as well as summary judgment

as to the Krammes' claim for unjust enrichment.  (Doc. 25).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.

Corp. v. Twombly*, 505 U.S. 544, 570 (2007).  The plaintiff must assert "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attached by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations,

alterations, and quotation marks omitted).  In other words, "[f]actual allegations must be

enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of*

*Approved Basketball Offs.*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and question marks omitted).

A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n. 14 (3d Cir. 2013) (internal citation and quotation marks omitted). Thus "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (alterations in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer probability that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678).

"The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 786-787 (quoting *Iqbal*, 556 U.S. at 679). The Court, however, does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face" and "nudge [a plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547; *see also Iqbal*, 556 U.S. at 680 (citing *Twombly*) (finding that respondent had failed to plead sufficient facts to state a claim for purposeful and unlawful discrimination as "respondent's complaint ha[d] not 'nudged [his] claims' of invidious discrimination 'across the line from conceivable to plausible'").

In contrast, a court will grant a party's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) when, drawing all inferences "in the light most favorable to the nonmoving party," *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009), there is no "genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific

7

facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied 507 U.S. 912 (1993).

Nevertheless, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).   A court, however, is justified in not granting summary judgment prior to the close of discovery.   *Doe v. Abington Friends School*, 480 F.3d 252, 25 (3d Cir. 2007).

## IV. ANALYSIS

Plaintiff claims in its Amended Complaint that an individual, acting in a representative capacity for the Defendant, had discussed the Pipeline Project with Plaintiff's president and explained that "once Defendant's work on the Pipeline Project began Defendant would be bringing as much as 50 to 100 trailer loads per day of these [wood] materials for disposal." (Doc. 24 at ¶ 12).   According to Plaintiff, after it expressed its interest in assisting with the disposal of Defendant's wood products, the Defendant's agent responded "to [the] effect: [t]hat's great, we will get our papers and contracts to you and get with FERC for your site approvals," and later indicated that "once FERC approval was obtained for Plaintiff's site(s), then Defendant would begin bringing those materials to Plaintiff's approved site."   (*Id.* at ¶¶ 15, 16).   Plaintiff further claims that these "oral promises" [2] allegedly made by Defendant

_____

[2] The Court, "taking as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts," *Ethypharm S.A.*, 707 F.3d at 231 n. 14, will conduct its analysis pursuant to the factual framework that Plaintiff believed Defendant's representative had made an express promise in the terms set forth under the Amended Complaint.

were then "put down in two writings" – the September 11, 2017 letter and the Timber

Services Agreement.  (Doc. 24 at ¶ 19).

As a result, Plaintiff now argues that not only did Defendant benefit from the written

agreements between the parties, but that "Defendant's failure to make deliveries to Plaintiff

as promised was a substantial, knowing violation of its *oral promises* to Plaintiff to make

such deliveries to Plaintiff as promised."  (Doc. 24 at ¶ 40) (emphasis added).  Plaintiff's

Amended Complaint therefore realleges claims for promissory estoppel (Count I) and unjust

enrichment (Count II) in connection with the oral and written agreements between the

parties.  The Court will review the two claims separately.

### 1.  Motion to Dismiss Plaintiff's Promissory Estoppel Claim

Generally, "promissory estoppel is designed to prevent the injustice that results when

a promisee is reasonably induced by, and relies upon, some promise by a promisor that is

broken."  *C&K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988).  A

court may thus enforce a promise unsupported by consideration under this doctrine where:

(1) the promisor makes a promise that he reasonably expects to induce action or

forbearance by the promisee; (2) the promise does induce action or forbearance by the

promisee; and (3) injustice can only be avoided by enforcing the promise.  *Carlson v. Arnot–*

*Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990); *Edwards v. Wyatt*, 335 F.3d 261,

277 (3d Cir. 2003) (quoting *Crouse v. Cyclops Indus.*, 560 Pa. 394, 745 A.2d 606, 610

(2000)).

Claims for promissory estoppel thus exist in instances where an agreement lacks consideration, but where "justice would be served by enforcing a promise" upon which a party reasonably relied. *Carlson,* 918 F.2d at 416 (citation omitted); *see also Thatcher's Drug Store v. Consol. Supermarkets, Inc.,* 535 Pa. 469, 636 A.2d 156, 160 (1994) (interpreting the second prong of the promissory estoppel doctrine as requiring justifiable reliance). Justifiable reliance on an oral promise, however, must end when the same parties later enter into a contract that directly contradicts that promise. *See Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798, 808 (E.D. Pa. 2011) (A plaintiff "cannot claim justifiable reliance when she soon thereafter signed a written contract that explicitly contradicted the alleged oral promise.").

In this instance, Plaintiff was guided by a contract, though unilateral in nature, that directly contradicted the terms of Defendant's oral promise to deliver "50 to 100 trailer loads per day" of wood product. (Doc. 24 at ¶¶ 12-19; *see also* Doc. 1-1 at 4-5). From the moment that Plaintiff signed the Timber Services Agreement, it was on notice that there instead would be "no minimum/maximum number of loads" delivered by Defendant, thus making any action taken after that point in contradiction to that knowledge unreasonable. (Doc. 1-1 at 4-5). As a result, Plaintiff's actions as pleaded considering the noncommittal terms of the Timber Services Agreement would be difficult to describe as justified under such circumstances. *Schnell*, 828 F. Supp. 2d at 808.

Likewise, Plaintiff's claims that it had "[r]enegotiated the terms of [its] existing customer relations as to their terms of delivery and payment" and "[t]urned down requests made ... to timber and process timber, logs and wood products from third parties" following the discussions with Defendant's representative seem far from the reasonable actions of a business that was waiting for FERC approval that may or may not come and hypothetical future deliveries of wood product not guaranteed in the Timber Services Agreement. Instead, they appear to have been the calculated moves of a company trying to maximize earnings by rearranging its schedule and passing over business opportunities in exchange for an unsettled chance at a greater sustained profit.  As such, it is difficult to accept the argument that the Court should reasonably infer that Defendant anticipated that Plaintiff would take such risks without any clear delivery schedule on the horizon.  *See Johnson v. Dunkin' Donuts Franchising L.L.C.,* 2014 WL 2931379, at *26 (W.D. Pa. June 30, 2014), aff'd, 610 F. App'x 208 (3d Cir. 2015) (An oral promise may be deemed unenforceable under the tenets of promissory estoppel where "no injustice results [as] a party relies on its own business judgment to pursue a potential business opportunity and ultimate success in the endeavor is not achieved.").

There is, however, one point of contention that would allow Plaintiff's promissory estoppel claim to survive a motion to dismiss: whether, in reliance of Defendant's "oral promises," Plaintiff made any modifications to its property to meet the requirements of Defendant's anticipated deliveries *after* the oral promises were made but *before* the parties

12

signed the Timber Services Agreement on September 13, 2017. According to the Amended Complaint, Plaintiff claims that it "made certain physical modifications to its primary yard ... including clearing portions of it, buying and replacing concrete barriers, and buying, laying and compacting stone." (Doc. 24 at ¶ 24). Though the current pleadings do not provide clarity as to whether these costs were incurred before or after the parties signed the Timber Services Agreement, Plaintiff does make clear that the aforementioned alterations were made after it was told that "once FERC approval was obtained for Plaintiff's site(s), then Defendant would begin bringing those materials to Plaintiff's approved site." (*Id.* at ¶¶ 16, 25). Thus, Plaintiff's claim has been "nudge[d]" enough to show sufficient "plausibility" to plead a cause of action. *See Twombly*, 550 U.S. at 547.

The Court, however, does note that it is aware of cases such as *Landan v. Wal-Mart Real Estate Business Trust*, 775 F. App'x 39, 44 (3d Cir. 2019), in which the Third Circuit has upheld dismissal of similar claims on summary judgment. *See id.* (plaintiff failed on summary judgment to support its promissory estoppel claim where defendant had described certain conditions it deemed essential to keeping open the possibility of entering into contractual relationship, but did not expressly promise that the parties would enter into any specified contract if the plaintiff satisfied those conditions); *see also Josephs v. Pizza Hut of America, Inc.*, 733 F.Supp. 222, 226 (W.D. Pa. 1989) (same).

As a result, Defendant's Motion will be denied as to Plaintiff's promissory estoppel claim to the extent Plaintiff asserts that it made the aforementioned modifications to its

13

facilities after Defendant's representative made his various oral promises but before the terms of the unilateral contract were finalized in the Timber Services Agreement on September 13, 2017.

### 2. Motion to Dismiss Plaintiff's Unjust Enrichment Claim

To succeed on a claim for unjust enrichment, a party must demonstrate: (1) that it "conferred a benefit upon Defendants; (2) Defendants appreciated the benefit; and (3) Defendants accepted and retained the benefit under circumstances making it inequitable for Defendants to retain the benefit without paying him." *Argue v. Triton Digital, Inc.*, 2017 WL 1611254, at *4 (W.D. Pa. Apr. 28, 2017). "Under the third element, 'a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that ... would be unconscionable for her to retain.'" *Id.* (quoting *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008)).

As in the Original Complaint, (Doc. 1-1 at ¶¶ 94-95), Plaintiff again fails to assert in the Amended Complaint any clear way in which it conferred a meaningful benefit upon the Defendant. (Doc. 22 at 10). Instead, Plaintiff reasserts that through the September 11, 2017 letter and Timber Services Agreement, Plaintiff had allowed the Defendant to "realize time and cost savings by beginning work on the Pipeline Project" as it could "demonstrate a present ability to comply with the waste disposal requirements of the Pipeline Project." (Doc. 24 at ¶¶ 63-65). This claim, as before, fails to explain how this "realize[d] time and cost savings" would be a benefit that came at Plaintiff's expense or rise to the level of a

benefit that would be "inequitable" or "unconscionable for [Defendant] to retain." *Argue,*

2017 WL 1611254, at *4; *see also* (Doc. 22 at 10). This argument further falls flat as

Defendant was able to both commence the Pipeline Project before Plaintiff had met the

prerequisites to "comply with the waste disposal requirements" of the project and file other

applications for FERC approval for third-party-controlled sites that were eventually

approved. (Doc. 24 at ¶ 32).

　　As secondary support for its unjust enrichment claim, Plaintiff now adds that "[b]y

establishing with Plaintiff the minimum amounts of money Defendant would be paid for the

schedule of materials Plaintiff would accept, Defendant was then enabled in negotiating

higher prices for some of those items" with third parties. (Doc. 24 at ¶¶ 67, 68).[3] The Court

has reservations as to whether the "benefit" from the information Plaintiff provided to

Defendant through the September 11, 2017 letter and Timber Services Agreement, which

reflects the same information a party might receive during preliminary contract negotiations,

would rise to the level of unconscionability that would allow for an unjust enrichment claim to

succeed. This argument instead equates to little more than a conclusory claim that a party

should not be able to obtain information from various sources before making a final

---

[3] Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory,* 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec. Inc.,* 764 F.2d 939, 944 (3d Cir. 1983)). As a result, though Defendant provided several contracts indicating that it had entered into agreement with various third-party providers before it had entered into written agreement with Plaintiff, potentially undermining Plaintiff's argument that it had provided Defendant with negotiating power, such facts are reserved for a motion for summary judgment. *Id.; see* (Doc. 25-2 at Exs. A-G).

determination as to what path forward would be best, which is not what the doctrine of unjust enrichment was meant to govern. *See Burton Imaging Group v. Toys "R" Us, Inc.*, 502 F.Supp.2d 434, 442 (E.D. Pa. 2007) (plaintiff failed to support its claim for unjust enrichment where defendant had allegedly used plaintiff's bid in business negotiations to pressure a competing third party to lower its proposal).

The Court, however, believes that discovery, to be undertaken by the parties, would provide clarity on the alleged benefits Defendant received through its written agreements with Plaintiff to a degree that would allow for appropriate resolution of this claim at the summary judgment phase of the current litigation. As such, Defendant's Motion to Dismiss Plaintiff's unjust enrichment claim will be denied.

### 3. Motion for Summary Judgment on Plaintiff's Unjust Enrichment Claim

A party moving for summary judgment bears the burden of showing that there are no genuine issues as to material fact. *Celotex Corp.*, 477 U.S. at 317. A district court, however, is rarely justified in granting summary judgment if discovery is incomplete in any way material to a pending motion. *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007). This is also the case where the moving party's motion is based solely on an affidavit of the moving party. *Id.*; *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) (At the summary judgment phase, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."). Defendant fails to provide more here and merely asks the

Court to leap ahead to a point in the litigation in which it should assume that all facts have been fully unearthed, even as Plaintiff contests the extent of available information. (Doc. 26 at 7-9); *see also Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988) (it is well established that a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery"). Thus, Defendant's request is premature.

Furthermore, according to Local Rule 56.1, "[a] motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. R. 56.1. As the Defendant failed to submit a statement of material facts in support of its Motion for Summary Judgment (*see* Local Rule 56.1) and withheld Plaintiff's opportunity to contest these facts, it may be reasonably assumed that there are still issues of fact in contention. As such, Defendant's Motion for Summary Judgment will be denied.

## V. CONCLUSION

For the reasons set forth above, Defendant Letourneau's Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim (Doc. 25) will be denied as to Counts I and II, and Plaintiff may proceed as limited in this Opinion. Defendant's Motion for Summary Judgment will also be denied.

Robert D. Mariani
United States District Judge